UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL DAVITT, | Case No. 20-CV-2064 (PJS/JFD) |
| Plaintiff, | |
| v. | ORDER |
| MICHAEL SPINDLER-KRAGE, in his individual capacity, and THOMAS CANAN, in his individual capacity, | |
| Defendants. | |

Lora M. Friedemann, FREDRIKSON & BYRON, P.A., for plaintiff.

Aaron M. Bostrom and Susan M. Tindal, IVERSON REUVERS, for defendant Michael Spindler-Krage.

Gregory J. Griffiths and John T. Giesen, DUNLAP & SEEGER, P.A., for defendant Thomas Canan.

During the early months of the COVID-19 pandemic, plaintiff Michael Davitt was homeless and living in Rochester, Minnesota. As part of a program to provide emergency housing to the homeless, the Olmsted County Housing and Redevelopment Authority ("OCHRA") rented a room for Davitt at the Super 8 hotel in Rochester. In late May, after Davitt had lived at the hotel for about two months and after OCHRA had ended its program, the hotel asked Davitt to either leave or begin paying rent. Davitt refused to do either, so the hotel called the Rochester police.

Uncertain of Davitt's rights, the police sought legal advice from defendant Michael Spindler-Krage, the Deputy City Attorney for the City of Rochester. At the

same time, an OCHRA representative sought legal advice from defendant Thomas Canan, a Senior Assistant County Attorney for Olmsted County. Spindler-Krage and Canan told the police and the OCHRA representative that Davitt did not have the right to remain at the hotel because he was not a tenant but merely an overstaying guest. After the officers received this advice, they arrested Davitt and charged him with trespass.

Davitt then brought this suit against Spindler-Krage and Canan, alleging that they violated his rights when they gave the legal advice that led to his forcible removal from the hotel. All parties now move for summary judgment.

## I.  BACKGROUND

The following facts are undisputed:

Davitt was homeless when the COVID-19 pandemic began in March 2020. Davitt sought shelter through a program offered by OCHRA, and OCHRA initially housed Davitt at the Rochester Convention Center. After Davitt was identified as "high priority for isolation" because of his age, OCHRA moved him to a private room at the Super 8 hotel ("the hotel") in Rochester on March 23, 2020. *See* Davitt Depo. at 8–9 [ECF No. 64-1]; Davitt Decl. ¶¶ 3–6 [ECF No. 90]; OCHRA Chron. Summ. [ECF No. 64-10].

During the course of his stay, Davitt learned about Governor Walz's COVID-related executive orders, including Executive Order ("EO") 20-14, which temporarily

suspended evictions of tenants by landlords during the COVID-19 Peacetime Emergency. Davitt concluded that EO 20-14 entitled him to remain at the hotel for six months without threat of eviction, whether or not OCHRA or anyone else paid rent. Davitt Depo. at 30–31; Davitt Decl. ¶ 9.

On April 28, 2020, Davitt met with Bill Franken, an OCHRA representative, and signed an "Agreement for Hotel Guests." The Agreement was printed on OCHRA letterhead and provided, in part, that OCHRA would work with Davitt to continue to search for "a permanent housing option or an alternate, more affordable housing option" and that Davitt would be expected to take advantage of such an option if one arose. The Agreement also provided that hotel management could ask Davitt to leave at any time. *See* Hotel Agrmt. [ECF No. 64-11]; Davitt Decl. ¶ 12. Davitt concedes that he read and understood the Agreement at the time he signed it. Davitt Depo. at 29.

Toward the end of May, OCHRA stopped paying the Super 8 to house Davitt, and hotel staff asked Davitt to either leave or begin paying rent. Davitt refused to do either, relying on his belief that, under EO 20-14, he could not be evicted for up to six months. On June 1, the hotel contacted Rochester police and asked them to remove Davitt. The responding officers sought advice from Franken and Spindler-Krage, as the officers were not certain if Davitt had the rights of a tenant, including the right to remain in his room until evicted through judicial process. Davitt Decl. ¶ 13; Davitt

Depo. at 12–13; Rochester Police Supp. Rep. [ECF No. 64-5]. Franken, in turn, sought advice from Canan, who then consulted with Spindler-Krage.

Franken and the officers told Spindler-Krage and Canan that Davitt was staying at the Super 8 as part of a program set up by OCHRA, and both attorneys were provided with copies of the Agreement for Hotel Guests that Davitt had signed. Based on what they were told and particularly on their review of the Agreement, Spindler-Krage and Canan each reached the conclusion that Davitt was not a tenant and did not have a right to remain at the hotel. *See* Spindler-Krage Depo. at 41–50 [ECF No. 64-2]; Canan Depo. at 26–30 [ECF No. 64-3]; Bostrom Decl. Ex. 12 [ECF No. 64-12].

After being so advised by Spindler-Krage and Canan, the police officers went to Davitt's room and warned him that he would be arrested if he refused to leave or pay for his room. Davitt responded that he would do neither, so the officers arrested him and removed him from the hotel. One of the officers later retrieved Davitt's belongings and gave them to Davitt when he was released from custody. Rochester Police Supp. Rep.; Davitt Depo. at 12–14.

On September 28, 2020, Davitt filed this lawsuit against the manager of the Super 8 hotel, alleging that he had been wrongfully evicted in violation of the "fed[eral] COVID-19 eviction law." ECF No. 1. Then-Magistrate Judge Katherine M. Menendez referred Davitt to the Federal Bar Association ("FBA") Pro Se Project on November 18,

-4-

2020.  On February 10, 2021, Lora Friedemann, a volunteer attorney working with the Pro Se Project,[1] entered an appearance on behalf of Davitt, and Friedemann filed an amended complaint against Spindler-Krage and Canan on September 13, 2021.  ECF Nos. 14, 39.  (The hotel manager was dropped as a defendant.)  The amended complaint contains five counts: (1) a claim under 42 U.S.C. § 1983 for violation of Davitt's Fourth Amendment rights; (2) a second § 1983 claim for violation of Davitt's Fourteenth Amendment rights; (3) a discrimination claim under the Minnesota Human Rights Act; (4) a request for a declaration that Davitt was a tenant of the hotel; and (5) a claim for unlawful ouster under Minn. Stat. §§ 504B.231, 504B.281.

All parties now move for summary judgment.  Davitt has withdrawn his state-law claims (Counts III and V), so only his federal claims (Counts I, II, and IV) remain.  Spindler-Krage and Canan ask the Court to enter judgment in their favor on those claims.  They argue that Davitt was merely a guest (not a tenant) of the hotel, and thus, like any overstaying hotel guest, he could be removed without judicial process.  They also contend that, even if Davitt was a tenant, qualified immunity shields them from liability for reaching a different conclusion.  Davitt also moves for summary judgment

---

[1]The Pro Se Project is "a partnership between the United States District Court for the District of Minnesota and the Minnesota Chapter of the [Federal Bar Association]" that is intended "to increase access to the federal court system while at the same time addressing the unique challenges of pro se litigation."  *Rickmyer v. ABM Sec. Servs., Inc.*, No. 15-CV-4221 (JRT/FLN), 2016 WL 1248677, at *5 (D. Minn. Mar. 29, 2016).  The Court expresses its appreciation to Friedemann for agreeing to represent Davitt.

on his federal claims. He argues that he "was a tenant under Minnesota law when he was forcibly removed from the hotel." Pl. S.J. Memo. at 2 [ECF No. 88]. For the reasons that follow, the Court grants defendants' motions and denies Davitt's motion.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### B. Qualified Immunity

Spindler-Krage and Canan argue that qualified immunity shields them from being held liable on Davitt's claims. "Qualified immunity protects public officials from § 1983 damage actions if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982)).  To determine whether a defendant is entitled to qualified immunity, courts must answer two questions: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct."  *Jenkins v. Univ. of Minnesota*, 838 F.3d 938, 944 (8th Cir. 2016).  Courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

According to Davitt, defendants violated his right to be free from unreasonable seizures under the Fourth Amendment and his right to procedural due process under the Fourteenth Amendment.  Davitt's theory is that, by advising Rochester police that Davitt did not have a right to remain at the hotel, defendants unlawfully caused the police to remove Davitt from the room where he had been living.

At the outset, the Court notes that this is an unusual § 1983 case in that the only allegedly illegal action taken by defendants was to provide legal advice in response to a request from the police.  Defendants did not order the police to remove Davitt from the hotel, nor did defendants prosecute or take any other action against Davitt after he was removed.  That said, courts have held or implied that a govement attorney can be held liable under § 1983 for giving legal advice that leads to a violation of a plaintiff's

constitutional rights.[2]  Therefore, the Court will assume that Spindler-Krage and Canan could—at least in theory—be held liable for providing legal advice to the police if that legal advice resulted in a violation of Davitt's Fourth and Fourteenth Amendment rights.

But in order to overcome the qualified-immunity defenses of Spindler-Krage and Canan, Davitt must do more than show that his rights were violated.  He must also establish that those rights were clearly established at the time of the violation.  *See Hanson ex rel. Layton v. Best*, 915 F.3d 543, 548 (8th Cir. 2019) ("[T]he plaintiff has the burden of demonstrating that the law confirming her constitutional right was clearly

---

[2]*See, e.g.*, *Skokos v. Rhoades*, 440 F.3d 957, 960 (8th Cir. 2006) (concluding that prosecutor was entitled to qualified immunity for advising police that plaintiffs were in possession of illegal machines); *Rieves v. Town of Smyrna*, 959 F.3d 678, 695 (6th Cir. 2020) (permitting § 1983 claim for false arrest against attorneys where plaintiffs alleged attorneys had erroneously advised law enforcement that activity in which plaintiffs were engaged was illegal); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (permitting § 1983 claim for false arrest against county attorney where plaintiffs alleged attorney had "ordered or otherwise procured the[ir] arrests" without probable cause); *Bray by Bray v. Hobart City Sch. Corp.*, 818 F. Supp. 1226, 1237 (N.D. Ind. 1993) ("In the instant case, Owens' legal advice may have caused the alleged deprivation of Benjamin's federal rights. Therefore, an attorney who renders legal advice to a state actor can be sued under Section 1983."); *see also Burns v. Reed*, 500 U.S. 478, 495 (1991) ("[I]t is incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice.  Ironically, it would mean that the police, who do not ordinarily hold law degrees, would be required to know the clearly established law, but prosecutors would not." (citation omitted)); *Burns v. Reed*, 44 F.3d 524, 527 (7th Cir. 1995) (noting that prosecutor's approval of law enforcement's use of hypnosis to interrogate plaintiff "conceivably could skirt the edges of constitutional propriety").

established."). The parties agree that both of Davitt's § 1983 claims depend on whether he had a protected property interest in his hotel room—a question the parties frame as whether Davitt was a tenant of the Super 8 hotel—because if he did not have such an interest, he was not unreasonably seized for purposes of the Fourth Amendment nor deprived of property for purposes of the Fourteenth Amendment. *See Gentry v. City of Lee's Summit, Mo.*, 10 F.3d 1340, 1345 (8th Cir. 1993) (§ 1983 liability does not attach without an interest for the Constitution to protect).

Hence, Spindler-Krage and Canan are entitled to qualified immunity unless Davitt can show that it was clearly established in June 2020 that someone in his position—an individual temporarily provided a hotel room under an emergency government program to protect homeless individuals during a pandemic—was a tenant of the hotel with the right to remain in his room without paying rent until the hotel obtained an eviction order from a judge.[3] Spindler-Krage and Canan are entitled to qualified immunity as long as their opinion that Davitt was not such a tenant was "reasonable when made." *Skokos*, 440 F.3d at 960; *see also Thomas v. Cohen*, 304 F.3d 563,

---

[3]The Court is aware that the Eighth Circuit has suggested that a defendant can violate the Constitution by seizing property, even when the plaintiff's right to that property is in dispute. *See Dixon v. Lowery*, 302 F.3d 857 (8th Cir. 2002); *Gentry*, 10 F.3d 1340. In *Dixon* and *Gentry*, however, there was no dispute that the plaintiff once had a clearly established interest in the property in question; the dispute was over the plaintiff's right to *continued* possession of that property. Here, however, the parties dispute whether Davitt *ever* had a clearly established interest in the hotel room.

583 (6th Cir. 2002) (for a government official to be held liable for violating a clearly established right, "precedent must exist that makes the unlawfulness of the official's conduct apparent." (quotations omitted) (Gilman, J., concurring in part)).

The issue of Davitt's tenancy is a matter of Minnesota law. *See Thomas*, 304 F.3d at 576 ("Property interests are not created by the Constitution. Instead, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." (citations and quotations omitted)); *Gentry*, 10 F.3d at 1343 (applying state law to issue of plaintiff's property rights). Minnesota law distinguishes between tenants,[4] who possess a protected interest in their residence and who cannot be removed except through eviction proceedings, and "overstaying guests," who are trespassers and who may be removed at will by a hotel. *Compare* Minn. Stat. §§ 504B.001, subd. 12, 504B.281 and *Berg v. Wiley*, 264 N.W.2d 145, 151 (Minn. 1978) (landlord must resort to judicial process to evict a tenant), *with* Minn. Stat. §§ 327.70, 327.72, 327.73, subd. 1.

The parties vigorously dispute whether Davitt was a tenant or an overstaying guest. The Court need not decide who is correct because all that matters for purposes of qualified immunity is whether the advice of Spindler-Krage and Canan that Davitt was

---

[4] Although Minn. Stat. § 504B.001, subd. 12, uses the term "residential tenants," the parties use the term "tenants." The Court will do likewise.

not a tenant was objectively reasonable at the time that it was given to the police. The Court concludes that it was.

The parties agree that whether a particular individual qualifies as a tenant under Minnesota law is a highly fact-specific inquiry that must be "be ascertained by a consideration of all the circumstances." *Quinn v. LMC NE Minneapolis Holdings, LLC*, 972 N.W.2d 881, 888 (Minn. Ct. App. 2022) (quoting *Asseltyne v. Fay Hotel*, 23 N.W.2d 357, 362 (Minn. 1946)), *review granted* (June 29, 2022). Yet the parties have not cited, and the Court has not found, any case involving circumstances that are identical—or even similar—to Davitt's circumstances. The absence of any such case is strong evidence that the issue of Davitt's tenancy was not clearly established in June 2020. *Cf. Skokos*, 440 F.3d at 960 (given that "the Arkansas Supreme Court had not yet ruled on the precise issue involved in this case" and defendant had "looked to analogous, if factually different, cases," the court concluded that defendant's "interpretation of the law was manifestly reasonable and . . . he is therefore entitled to qualified immunity on this claim").

The fact that no Minnesota court had addressed the tenancy rights of an individual in Davitt's situation is not surprising. Davitt had been temporarily provided a room in a hotel as part of an unprecedented government effort to provide emergency shelter to homeless individuals who were deemed particularly vulnerable to a rapidly

-11-

evolving worldwide pandemic.  The hotel room was provided pursuant to an agreement between a government agency and the hotel (not between Davitt and the hotel), and the hotel room was paid for by the government (not Davitt).  Davitt did, however, sign an agreement with the government agency (not the hotel) in which he acknowledged that his lodging was temporary and that hotel management could ask him to leave at any time.  *See* Hotel Agrmt.  These circumstances were truly unprecedented, and no statute, regulation, judicial decision, or other legal authority clearly established that Davitt was a tenant who had a constitutionally protected interest in his hotel room.  *Cf. Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1375 (8th Cir. 2022) (concluding governor was entitled to qualified immunity for executive orders "issued in response to an unprecedented pandemic" because the orders did not constitute a taking for which just compensation was owed under clearly established law).  Spindler-Krage and Canan are therefore entitled to qualified immunity, and Davitt's claims must be dismissed.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants Spindler-Krage and Canan's motions for summary judgment [ECF Nos. 61 and 70] are GRANTED.

2. Plaintiff Davitt's motion for partial summary judgment [ECF No. 87] is DENIED.

3. Counts I, II, III, and V of Davitt's second amended complaint [ECF No. 39] are DISMISSED WITH PREJUDICE, and Count IV is DISMISSED WITHOUT PREJUDICE AS MOOT.[5]

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  February 14, 2023  s/Patrick J. Schiltz
Patrick J. Schiltz, Chief Judge
United States District Court

---

[5]In Count IV of his amended complaint, Davitt seeks a declaratory judgment that "he was a tenant under Minnesota law during the time when he resided at the Super 8 Hotel."  ECF No. 39 at ¶ 49.  Given that the Court is dismissing Davitt's two federal claims—and given that Davitt has dismissed his two state claims—Count IV is moot.